OPINION
{¶ 1} Defendant, Brian Ross, appeals from his conviction and sentence for forgery and receiving stolen property.
 {¶ 2} On September 1, 2005, Defendant cashed a payroll check (number 2329) from B R Services, a trucking company, at Home City Federal Savings Bank in Springfield. The check was *Page 2 
payable to Defendant in the amount of eight hundred thirty-one dollars and nine cents. Diane Barnhart, head bank teller, asked for identification and wrote Defendant's driver's license number on the face of the check. Later that same day, Home City Bank notified Jody Hirtzinger, officer manager of B R Services, that B R Services' payroll account was overdrawn. Upon investigating, Hirtzinger discovered that several payroll checks were missing from a filing cabinet in the company's office. There had been no problem with B R's payroll account the previous week. One of the missing checks was the check Defendant had cashed. The signature on the check purporting to be Jody Hirtzinger's signature was not her signature.
 {¶ 3} Kadar Aldridge, the boyfriend of Defendant's sister, gave the B R Services check to Defendant and paid Defendant five dollars to cash the check for him, telling Defendant that Aldridge had his boss at B R Services make out the check in Defendant's name because Aldridge had lost his wallet and driver's license and therefore couldn't cash a check. Aldridge had recently been fired by B R Services for not showing up to work. Diane Barnhart, the bank teller who cashed the check, identified Defendant from a photographic lineup as the man who had cashed the B R Services payroll check. *Page 3 
 {¶ 4} As a result of these events, Defendant was indicted on September 26, 2005, in Case No. 05CR861 on one count of forgery, R.C.2913.31(A)(1), and one count of receiving stolen property, R.C.2913.51(A). On March 13, 2006, Defendant was indicted in Case No. 06CR296 on additional counts of forgery, R.C. 2913.31(A)(3), and receiving stolen property, R.C. 2913.51(A), in relation to another stolen B R Services payroll check, number 2325.
 {¶ 5} On March 15, 2006, a jury trial began in Case No. 05CR861, following which Defendant was found guilty of both forgery and receiving stolen property in relation to B R Services payroll check number 2329 that Defendant cashed. The trial court immediately sentenced Defendant to prison terms of twelve months on each count, to be served consecutively, for a total of twenty-four months.
 {¶ 6} On March 16, 2006, Defendant entered into a plea agreement with the State in Case No. 06CR296. In exchange for Defendant's pleas of guilty to the forgery and receiving stolen property charges, Defendant was sentenced to twelve months on each count, to be served consecutively to each other but concurrent with Case No. 05CR861.
 {¶ 7} On April 7, 2006, Defendant timely appealed to this court from his conviction and sentence in both Case Nos. 05CR861 and 06CR296. The assignments of error in this appeal, *Page 4 
however, concern only Case No. 05CR861, and the B R Services payroll check number 2329 that Defendant cashed.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "ROSS WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 9} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Strickland, supra. Even assuming that counsel's performance was deficient, a defendant must still show that the error had an effect on the judgment. State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where a defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 10} In Strickland the United States Supreme Court stated: *Page 5 
 {¶ 11} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Internal citations omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Internal citations omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (Internal citations omitted).
 {¶ 12} "The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of *Page 6 
ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
 {¶ 13} "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate *Page 7 
assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, supra, at 689-690.
 {¶ 14} Defendant argues that his trial counsel was not adequately prepared to effectively represent him at trial. In support of that contention, Defendant claims that his counsel misrepresented Defendant's age to the jury, that counsel was unaware of one witness for Defendant who had showed up at trial to testify, and that counsel failed to argue that it was not Defendant who made out the check.
 {¶ 15} During her opening statement defense counsel mistakenly told the jury that Defendant was forty-seven years of age, instead of fifty. Defendant immediately corrected his counsel's mistake. It is unclear to us what possible relevance that difference in Defendant's age has to this case. Counsel's misstatement in that regard certainly does not constitute a basis for finding constitutionally deficient performance. Such claims are completely frivolous.
 {¶ 16} The witness who unexpectedly showed up at trial to testify on behalf of Defendant, whom Defendant claims defense counsel was unaware of, was Garfield Parker, a pastor at a local Springfield church that Defendant attends. Pastor Parker was a character witness for Defendant, and testified that for the past year or so Defendant has stayed sober, *Page 8 
stayed out of trouble, has been truthful, and has become more involved in the church. Regardless of whether or not counsel had any foreknowledge of the existence of this witness, and regardless of whose fault that may have been, counsel or Defendant, what is important is that Pastor Parker did in fact testify on Defendant's behalf. Thus, any claim of deficient performance by defense counsel in that respect is likewise frivolous.
 {¶ 17} Finally, with respect to Defendant's complaint that his counsel did not argue that it was not Defendant who actually wrote or made out the check, be it Kadar Aldridge, Defendant's sister, or someone else, is not relevant to Defendant's conduct in taking that check to the bank and presenting it for payment. What is important is that Defendant was the named payee on the check, Defendant knew he was not entitled to receive any money from B R Services, and Defendant nevertheless presented the check for payment and walked out of the bank with the amount of money denoted on the face of the check. Defendant admitted all of these things during cross-examination. That Kadar Aldridge may have been the person who actually wrote or prepared the check is not a defense for Defendant regarding his own conduct in presenting the check for payment and defrauding the bank in order to obtain the money. Defendant's claim that he did not know the *Page 9 
check was stolen was considered and obviously rejected by the jury. No deficient performance by trial counsel has been demonstrated.
 {¶ 18} The defense in this case was that Kadar Aldridge told Defendant that he had his boss at B R Services make out a check that was intended for Aldridge in Defendant's name because Aldridge had lost his wallet and driver's license and couldn't cash a check. Accordingly, Defendant did not know or have reasonable cause to believe that the check was stolen or that he was facilitating a fraud by presenting the check to the bank for payment. Defendant operated under a good faith, albeit mistaken, belief that he was doing a good deed for Aldridge, his sister's boyfriend, by cashing the check for him.
 {¶ 19} In the face of overwhelming evidence of guilt, including Defendant's own admissions at trial that he cashed the check from B R Services for over eight hundred dollars knowing that it did not belong to him or represent any money that was owed to him by B R Services, the defense presented its best plausible theory, given the state of the evidence. While in applying hindsight after the fact it is all too easy and tempting to criticize and second guess trial counsel's performance, Strickland, the fact is that defense counsel had very little to work with in this case, and representation *Page 10 
below an objective standard of reasonableness, as judged as of the time of trial, has not been demonstrated.
 {¶ 20} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 21} "THE EVIDENCE PRESENTED BY THE STATE DOES NOT SUPPORT ROSS' CONVICTION."
 {¶ 22} In this assignment of error Defendant argues that his convictions for receiving stolen property and forgery are not supported by legally sufficient evidence and are against the manifest weight of the evidence.
 {¶ 23} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a *Page 11 
light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 25} With respect to Defendant's conviction for receiving stolen property, R.C. 2913.51(A) provides that "no person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." There is no question that Defendant received, retained and disposed of property of another by cashing the B R Services payroll check. Defendant argues, however, that the State failed to present any evidence which shows that he knew or had reasonable cause to believe that the check he cashed had been stolen.
 {¶ 26} Construed in a light most favorable to the State, the evidence presented in this case permits a finding that the B R Services payroll check that Defendant cashed had been recently stolen. Cashing that check on September 1, 2005, caused B R's payroll account at the bank to become overdrawn, and the managers/operators of B R Services did not become aware of any problem with the company payroll until they were notified by the bank on September 1, 2005, after Defendant cashed the check. Defendant was convicted for receiving stolen property. The unexplained possession of recently stolen *Page 12 
property may give rise to a permissive inference of guilty knowledge; that the possessor knew or had reasonable cause to believe that the property had been obtained through commission of a theft offense,State v. Arthur (1975), 42 Ohio St.2d 67; State v. Simpson (Sept. 11, 1981), Montgomery App. No. CA7105, and the jury was so instructed in this case.
 {¶ 27} Viewed in a light most favorable to the State, the evidence presented in this case is sufficient to permit a rational trier of facts to find all of the essential elements of receiving stolen property to be proved beyond a reasonable doubt. Defendant's conviction for that offense is therefore supported by legally sufficient evidence.
 {¶ 28} Defendant's conviction for forgery is more problematic. Defendant was found guilty of violating R.C. 2913.31(A)(1) which provides that "no person with purpose to defraud, or knowing that the person is facilitating a fraud, shall forge any writing of another without the other person's authority." "Forge" means to fabricate or create any spurious writing. R.C. 2913.01(G). Defendant argues that even construing the evidence in a light most favorable to the State, there is no evidence in this case that he actually forged the B R Services payroll check that he cashed. We agree.
 {¶ 29} The State is correct in its assertion that there is *Page 13 
ample evidence in this case of Defendant's intent to defraud or knowledge that he was facilitating a fraud, including his own admissions at trial that he knew B R Services did not owe him any money, and yet he took a payroll check from that company that was made out to him and presented that check at the bank for payment, walking away with eight hundred thirty-one dollars and nine cents, the face amount of the check. That, however, is not sufficient for a forgery conviction pursuant to R.C. 2913.31(A)(1). That section requires the State to prove that Defendant forged the writing of another without that person's consent. In other words, in this case the State was obligated to prove, in order to establish a violation of R.C. 2913.31(A)(1), that Defendant actually forged the B R Services payroll check that he cashed.
 {¶ 30} The B R Services check named Defendant as the payee and bears the signature of Jody Hirtzinger, the office manager of B R Services. She testified at trial that she never heard of Defendant, that he never worked for B R Services, and that the signature on that check purporting to be hers is not her signature. Clearly, that evidence is sufficient to establish that the payroll check from B R Services that Defendant cashed was, in fact, forged. It is not sufficient however to prove that Defendant is the person who forged that check, especially here where the only evidence concerning who wrote or made out *Page 14 
that check came from Defendant's own testimony that Kadar
Aldridge gave him the check and told him that Aldridge had his boss at B R Services make out the check in Defendant's name so that Defendant could cash it for Aldridge because Aldridge had lost his driver's license and therefore did not have the proper identification needed to cash a check. Even assuming that the jury could reasonably infer from the evidence presented in this case that Aldridge is the person who stole and wrote out the check, there is no evidence that Defendant forged the check or that he in any way participated in Aldridge's forging of the check. In any event, such evidence would only suffice to establish a violation of R.C. 2913.31(A)(3), not (A)(1), the offense charged here.
 {¶ 31} On the evidence before us, even construed in a light most favorable to the State, the most the evidence proves is that Defendant cashed (uttered) a payroll check from B R Services for $831.09 that he knew did not belong to him and that had, in fact, been forged. That is not sufficient to prove that Defendant forged that check and accordingly violated R.C. 2913.31(A)(1). Defendant's conviction for forgery is not supported by legally sufficient evidence, and therefore must be vacated. That determination moots Defendant's further argument that his conviction for forgery is against the manifest weight of the evidence, and we need *Page 15 
not address that contention. App.R. 12(A)(1)(c). We will, however, address Defendant's argument that his conviction for receiving stolen property is against the weight of the evidence.
 {¶ 32} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 33} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 34} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed: *Page 16 
 {¶ 35} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 36} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 37} In arguing that his conviction for receiving stolen property is against the manifest weight of the evidence, Defendant repeats his earlier argument that while he may have retained and disposed of property of another by cashing the B R Services payroll check, there is no evidence which contradicts his explanation for how he came into possession of that check, and that evidence does not demonstrate that Defendant knew or had reasonable cause to believe that the check had been obtained through commission of a theft offense. *Page 17 
 {¶ 38} As we previously discussed, the evidence in this case permits a finding that the B R Services payroll check that Defendant cashed had recently been stolen. Furthermore, Defendant's possession of that recently stolen property gives rise to a permissive inference that Defendant knew or had reasonable cause to believe that the check had been obtained via commission of a theft offense. As for Defendant's explanation as to how he came into possession of that B R Services payroll check, the credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts to resolve.DeHass. The jury did not lose its way simply because it chose not to believe Defendant's version of the events. Reviewing this record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's conviction for receiving stolen property is not against the manifest weight of the evidence.
 {¶ 39} Defendant's second assignment of error is sustained in part and overruled in part. Because Defendant's conviction for forgery in case number 05CR861 is not supported by legally sufficient evidence, his conviction and sentence for that offense will be reversed and vacated. Defendant's conviction for receiving stolen property in case number 05CR861 is *Page 18 
supported by legally sufficient evidence and is not against the manifest weight of the evidence, and his conviction and sentence for that offense will be affirmed. Defendant's convictions and sentences for forgery and receiving stolen property in case number 06CR296, which are based on Defendant's guilty pleas, will also be affirmed.
 {¶ 40} Our resolution of the error Defendant assigns operates to modify Defendant's sentence in case number 05CR861 to a single sentence of twelve months imprisonment for the offense of receiving stolen property. Because the trial court ordered that sentence to be served concurrent with the two consecutive twelve months sentences the court imposed in case number 06CR296, no resentencing is required. However, the case will be remanded to the trial court pursuant to App.R. 27, specifically to notify the Department of Rehabilitation and Correction of our modification of Defendant's sentence in case number 05CR861.
 BROGAN, J. And DONOVAN, J., concur. *Page 1